Benjamin C. Norton v. Commissioner. Melville Norton v. Commissioner. Celia Morris v. Commissioner.
Norton v. Commissioner
Docket Nos. 4177, 4178, 4179.
United States Tax Court
1946 Tax Ct. Memo LEXIS 203; 5 T.C.M. (CCH) 315; T.C.M. (RIA) 46105; April 29, 1946
*203 Raymond C. Sandler, Esq., and Nathan C. Schwartz, Esq., 6253 Hollywood Blvd., Los Angeles 28, Calif., for the petitioners. Byron M. Coon, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: By agreement these three cases were consolidated at the time of the hearing. There was no stipulation as to the facts. The respondent determined deficiencies in the tax liabilities of the three petitioners for the calendar year 1941 in the following amounts: Benjamin C. Norton
$2,667.28
Melville Norton
2,478.37
Celia Morris
2,394.80
The petitioners are residents of Los Angeles, California, and filed their income tax returns on the cash basis with the collector of internal revenue for the sixth district of California. The question involved in each case is: Was the petitioner's one-third of the partnership loss in 1941 from the sale of certain eighteen lots fully deductible as an ordinary loss from trade or business, or was it only partly deductible as a long term capital loss? Findings of Fact Petitioners Benjamin C. Norton and Melville Norton, with a brother-in-law, Sol Morris, established a partnership in 1908 *204 with no written partnership agreement. They entered in business as retailers, of wearing apparel and later took on, as an added activity, the wholesale jobbing of wearing apparel. In 1919 they entered the clothing manufacturing business. Sol Morris died and was succeeded in the partnership by Celia Morris. During the war years the partnership prospered very greatly but immediately thereafter the business declined. Between the years 1922 and 1924 three separate pieces of real estate were purchased by the partnership having a marketable value of approximately $500,000. The actual amount invested in the property was approximately $152.000. The rest of the purchase price was represented by assumed mortgages. During the period of the purchase the partnership had a bank indebtedness of between $250,000 and $300,000. The partnership had assets, including the real estate, of approximately $1,200,000 and a net worth of approximately $600,000. One property purchased by the partnership, located at 456-62 South Main Street, was a two story building having four storerooms on the lower floor and a hotel or rooming house on the upper floor. One of these storerooms was occupied by a clothing *205 merchant who was a retail outlet for petitioners. This property was sold in 1942. A second property was a three story brick building, located at 323 South Main Street. This had four storerooms on the ground floor and a gymnasium on the second and third floors. One of these storerooms was occupied by a clothing merchant who was a retail outlet for petitioners. This building was sold in 1926. As a part of the purchase price petitioners acquired a lot on Sunset Boulevard. This lot was later traded for a group of vacant lots in Culver City which were sold in 1941 and from which sale the loss occurred which is involved in this proceeding. The third purchase was a two story frame building in Huntington Park which had six storerooms on the ground floor and a hotel in the upper floor. Two of the storerooms were combined by the petitioners to serve as a retail clothing store for a tenant who handled the merchandise sold by petitioners. This building was destroyed by an earthquake in 1934. A new and modern brick building, similar to the original frame building, was built on the site and this property was sold in 1945. When petitioners made these purchases they did not notify their bank *206 to whom they were heavily indebted, nor did they inform the bank that they were entering in the real estate business. The first indication that the bank had that petitioners had purchased real estate was when this property appeared upon their bank statement. Prior to these real estate purchases no member of the partnership had ever engaged in the real estate business nor had the partnership acquired real estate except on rare occasions when it had been taken in to protect the partnership from a financial loss from a financially weak debtor. The clothing merchants who occupied the storerooms in each of the buildings purchased were financed in their business to a considerable extent by the petitioners. Petitioners rented some parts of the premises for a term of from five to ten years and on at least one other unit there was a lease of three years, and the rest was rented for shorter periods. Plans were made for improving the ground floor of one of the buildings but they were abandoned because of the unexpected high cost of the improvement. The property was listed with real estate agents for sale. Petitioners at no time were licensed as real estate brokers or realtors. Opinion
*207 The question involved in the determination of these proceedings is almost exclusively one of fact. The question presented turns upon whether or not the vacant lots which were sold by petitioners in 1941 constituted property held by the taxpayer "primarily for sale to customers in the ordinary course of their trade or business." The question is one of resolving the intent of the partners during the time that they operated their real estate holdings. That intent again is to be determined from the facts surrounding the acquisition and sale of the property; the expressed intention of the taxpayers; and the acts of the taxpayers from which an intention may be deduced. The respondent, based upon information acquired during the course of his investigation, has determined that it was not the intention of petitioners to hold this real estate primarily for sale to customers in the ordinary course of petitioners' trade or business. Such holding by the respondent places the burden upon the petitioners to prove the contrary. Petitioners rely upon the testimony of Benjamin C. Norton, one of their number, who, at the time of the hearing, said that it was the intention of the partners in 1922 *208 to enter into the real estate business for the purpose of buying, improving and selling real estate. In his testimony he then testified as to the facts which make up the findings of fact in this case. The briefs of petitioners and respondent cite a number of cases on the question as to whether or not particular property was a capital asset. It does not seem to be profitable to refer to these cases for the reason that each and every one of them turn upon the peculiar facts involved in the particular determination. In the case at bar, if we disregard the statement of Benjamin Norton as to what his intention and the intention of his partners were in 1922, the surrounding facts establish that petitioners could have purchased and held this property for other reasons than to sell to customers in the ordinary course of their trade or business. The peculiar coincidence that in each property purchased there was a retail clothing dealer who was a retail outlet for petitioners and extensively financed by petitioners, would indicate that the petitioners in 1922, in addition to their manufacturing business, might have had in mind the operation of a series of chain stores. Benjamin Norton's protestation *209 that he desired one of their personally financed retail stores in each of these buildings so that he could get an accurate check on the amount of business transacted and thereby be in a position to raise the rents of the other tenants in the building, is not easily acceptable. The connection between the revenues of a retail clothing store and those of a saloon, a moving picture theater, a rooming house and a training place for prize fighters is not at once obvious. Again, the fact that petitioners entered into leases of varying lengths of time with tenants for different parts of these buildings would indicate that petitioners might have had the idea of operating rental property in addition to the control of retail stores. Or, as a third possibility, there certainly is nothing in the record to negative the fact that these petitioners were merely engaging in a temporary speculation, a short flyer in the real estate business which is done by large numbers of our citizens with no intention whatsoever of going into the real estate business as a permanent part of their method of earning a livelihood. As was said by the Court in Phipps v. Commissioner, (C.C.A. 2 - 1935 [1931]), : *210 Persons with large incomes of course invest their surplus funds in something, and if, to diversify their holdings, they buy land, with the expectation of selling it when a good price is offered, such an expectation cannot, in our opinion, convert some sales of land that had been held for seven or eight years into a trade or business in real estate. There should be a greater continuity and larger absorption of time in such transactions to make the taxpayers more than investors. A fair reading of the record makes it clear that nothing was done during the years in question but to hold land for sale which had been previously purchased, and to accept such offers from purchasers as were presented by brokers and seemed satisfactory. There was during the years in question no activity amounting to a trade or business within the meaning of the statute, and whether there was such a trade or business depended on the situation of the taxpayers at the time of the sale. They had not continuously engaged in the development and sale, or the purchase and sale of lands. ; ; *211 ; ; ; . It cannot be held that the taxpayers' supervision of their own investments was a "trade" or "business", for such a construction of the statute providing for a tax of 12 1/2 per centum on capital net gain would defeat it altogether. The fact that petitioners, who were indebted heavily to their bank in 1922, would enter into a permanent business of buying and selling real estate on a large scale, which was the testimony of Benjamin Norton, without even informing their banker on that subject, would indicate that their idea of entering into this business was not very formally fixed at that time. If petitioners, furthermore, had contemplated going into the real estate business as a permanent business, the reasonable thing for them to have done would have been to have made some contact with some realtor, indicating the permanence of their activities, and establish some kind of a contractual relation to carry on that business, *212 yet there was no testimony on this question introduced in the hearing herein. In short, there is not sufficient testimony introduced by the petitioners in this case to sustain the burden of proof which is placed upon them to overcome the finding of the respondent that their venture in real estate resulted in a long term capital loss. Judgment will be entered for the respondent.